UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10 CR 816-1 |
| vs. | ) | |
| | ) | |
| RANDY PACHNIK | ) | |

## UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S MOTION FOR DEPARTURE AND VARIANCE

Defendant Randy Pachnik was charged with tax evasion, in violation of Title 26, United States Code, Section 7201 (Counts One, Three, Five and Seven), willfully failing to file tax returns with the Internal Revenue Service, in violation of Title 26, United States Code, Section 7203 (Counts Two, Four, Six and Eight), and corruptly endeavoring to impede the Internal Revenue Service, in violation of Title 26, United States Code, Section 7212(a) (Count Nine). Defendant has pled guilty to Count Three of the indictment, which charges defendant with tax evasion, in violation of Title 26, United States Code, Section 7201. Count Three carries a maximum sentence of 5 years' imprisonment. Count Three also carries a maximum fine of $100,000, and the Court must order costs of prosecution, estimated not to exceed $500.

Defendant carried out a scheme to defraud and thwart the IRS from collecting taxes on over $2.6 million in income that defendant earned during the course of nine years. Under the factors set forth in 18 U.S.C. § 3553(a), the government asks that this Court impose a sentence within the guidelines range between 30 and 37 months' imprisonment.

I.     **Background**

The following facts of the offense are undisputed, as stated in the plea agreement:

Defendant Pachnik was a podiatrist licensed by the State of Illinois and earned income by providing podiatrist services. Defendant provided podiatrist services to patients through two medial groups during 2006    Preferred Podiatry Group, located in Northbrook, Illinois, and Midwest Physicians Group, located in Orland Park, Illinois. In order to conceal his income from the Internal Revenue Service, defendant directed these medical groups to make checks for his fees payable to two purported organizations    Western Enterprises and Rama Enterprises. Defendant Pachnik entered into an agreement with Western Enterprises, an unincorporated entity in Maryland, for it to receive checks from these medical groups on behalf of defendant Pachnik. Western Enterprises deposited the checks, retained 10% of the amount deposited, and issued checks payable to defendant Pachnik for the rest, which defendant deposited into his personal checking account. In order to further conceal his income from the Internal Revenue Service, defendant Pachnik directed Preferred Podiatry Group to issue checks to Rama Enterprises Business Trust, an unincorporated entity that was wholly owned by defendant Pachnik. Defendant Pachnik then used Rama Enterprises' bank account as his own personal bank account. Rama Enterprises had no purpose other than to conceal defendant Pachnik's income from the Internal Revenue Service.

Defendant also sent frivolous communications to the Internal Revenue Service challenging its ability to levy taxes and impose liens for the collection of taxes, including (1)

2

a letter sent on or about January 29, 2007, in which defendant Pachnik stated that correspondences from the Internal Revenue Services to him would not be acknowledged because, among other things, they did not refer to him as "The Living Soul" and did not contain a "wet blue ink signature under penalty of perjury," and (2) a letter sent on or about May 29, 2008, in which defendant Pachnik stated, among other things, that the Internal Revenue Service could not prove that it had "authority to contact a living soul," that it had "subject matter jurisdiction" over him, that it had "first hand knowledge of any financial activity by [him]   the living soul," and that it did not have "any documents that show when [he] became a U.S. citizen." Defendant Pachnik filed a lien with the Cook County Recorder of Deeds in the amount of $4 million on August 4, 2008 against an Internal Revenue Service officer who attempted to collect taxes due and owing by defendant Pachnik.

During calendar year 2006, defendant Pachnik received gross income of $1,015,469, which included $226,268 of gross income from podiatrist services and a distribution of $789,201 from an IRA account that he inherited from his brother. On this gross income, defendant Pachnik owed to the United States federal income tax of $332,289. Defendant Pachnik was required by law, following the close of calendar year 2006 and before on or about April 17, 2007, to file a federal tax return with the Internal Revenue Service and to pay such income tax. Defendant Pachnik failed to file any income tax return or pay income taxes for calendar year 2005, but instead attempted to evade and defeat the payment and collection of income taxes owed by him, as discussed above.

For purposes of computing his sentence pursuant to Guideline §2T1.1 and §1B1.3(a)(2), defendant admitted to the following facts that constitute relevant conduct for the offense of conviction:

Defendant Pachnik attempted to evade and defeat federal income tax due and owing by him to the United States for calendar years 2001 through 2005, 2007 and 2008. Defendant Pachnik received gross income in these calendar years, and owed to the United States federal income tax as follows:

| Calendar Year | Gross Income | Federal Income Tax Owed |
|---|---|---|
| 2001 | $211,137 | $42,227 |
| 2002 | $148,279 | $29,656 |
| 2003 | $208,877 | $41,775 |
| 2004 | $293,619 | $58,724 |
| 2005 | $331,144 | $62,181 |
| 2007 | $203,776 | $45,504 |
| 2008 | $250,770 | $67,388 |

Defendant was required to but failed to file any federal income tax return with the Internal Revenue Service for these calendar years, and did not pay any federal income tax. In order to conceal his income during these calendar years, defendant Pachnik directed his fees from Preferred Podiatry Group and Midwest Physician Groups to be made payable to either Western Enterprises (starting in 2004) or Rama Enterprises (starting in 2003).

4

Defendant also sent frivolous communication to the Internal Revenue Service challenging its ability to levy taxes and impose liens for federal income taxes owed from 2001 onwards in order to evade the payment of federal income taxes. Defendant also filed a frivolous $4 million on an Internal Revenue Service officer on August 4, 2008 who attempted to collect taxes due and owing by defendant Pachnik from 2001 onwards.

## II.     Guidelines Calculation

There is no dispute that defendant's guideline range is between 30 and 37 months' imprisonment. Defendant has asked this Court to depart from the guidelines pursuant to Guideline §§5H1.1, 5H1.6, 5H1.8 and 5K2.0. The government addresses these arguments in the context of §3553(a), as detailed below.

## III.    A Sentence Within the Guidelines Range is Reasonable, But Not Greater Than Necessary Under 18 U.S.C. § 3553(a)

The government asks this Court to impose a sentence of between 30 and 37 months' imprisonment based on the nature and circumstances of the offense, defendant's history and characteristics, to ensure general and specific deterrence, and to impose just punishment for the offense. Defendant's request for home detention or probation is not supported by the factors set forth in 18 U.S.C. § 3553(a) and would constitute an extraordinary departure.

### 1.       Nature and Circumstances of the Offenses

The nature and circumstances of the offense are serious. Defendant is a licensed podiatrist in the state of Illinois and earned significant income through his profession during tax years 2001 through 2008. Yet, defendant engaged in a scheme to defraud the IRS and

evade taxes for approximately 9 years. Defendant did so by funneling his income through two shell corporations - Western Enterprises and Rama Enterprises. Defendant committed this offense solely to conceal his income from the IRS. The amount of income concealed was substantial    over $2.6 million. And defendant's scheme deprived the IRS and the United States Treasury of tax revenue in the amount of over $679,000, which he will surely now claim he is unable to repay and in this time of debt crisis, surely revenue that the United States Treasury could use.

The IRS spent substantial resources and time chasing defendant for his nonpayment of taxes. As the Court can see, attached to the PSR are numerous letters sent by the IRS demanding payment and imposing liens. Defendant's response is typical of those individuals known as "tax protesters."  Defendant refused to file tax returns or pay his taxes, but submitted frivolous letters claiming that the IRS had no authority to contact "a living soul," that it "cannot be proven" that he is a U.S. citizen, and that it "cannot be proven" that he is "not a living soul," among many other ridiculous suggestions. These letters cited various irrelevant provisions of the IRS code claiming the IRS had no authority over him. These letters, sometimes written in bold all-caps font, also contained various threats to IRS agents that they will be fired, that they have no authority to issue these notices, and accused the IRS and its agents of committing fraud. These letters are attached to the PSR for the Court to review.

Indeed, in this case, defendant did not merely respond with words but with actions.

On or about August 4, 2008, defendant filed a lien for $4 million against an IRS revenue officer who was sending letters to the defendant as a result of his nonpayment of taxes. This $4 million lien was recorded with the Cook County Recorder of Deeds. The lien was purportedly because the IRS revenue officer had used defendant's name four times in a correspondence, which name defendant claimed was "copyrighted" and which defendant purportedly penalized in the amount of $1 million per use. Thus, this IRS revenue officer one day discovered a lien against him personally for $4 million. The lien is also attached to the PSR.

Defendant's conduct shows a blatant disrespect for United States' laws, and demonstrates his ridiculous belief that he is somehow immune from the United States tax system. He has caused the government to expend time and resources prosecuting him for his evasion of taxes. He has deprived the United States of over $600,000 in tax revenue while enjoying the full benefits of his $2.6 million gross income from his lucrative profession. He also attempted to cause financial harm to the IRS officer assigned to his case by recording a frivolous lien against him. This conduct should not be tolerated. A sentence of imprisonment in the guidelines range will punish defendant for the serious crime that he has committed.

### 2.    History and Characteristics of Defendant

Defendant's history and characteristics do not warrant a below guidelines sentence. Indeed, defendant's character, as displayed in his letters to the IRS, show that he is a serial

tax protester with no regard for United States' tax laws.  Defendant does not deserve a below guidelines sentence merely because he is 63 years old and a criminal history category I.  First, defendant's age does not make him incapable of serving a sentence of approximately 3 years, and there is nothing that defendant puts forward that demonstrates difficulty in serving this sentence.  Indeed, by way of analogy, Guideline §5H1.1 provides that age is a consideration when it is present to an unusual degree and distinguishable from the typical case covered by the guidelines, and may be applicable when the defendant is elderly and infirm.  There is no evidence in the PSR that demonstrates defendant's age makes him  incapable of serving a term of imprisonment.

Second, while this is defendant's first offense, he has been engaging in this scheme and dodging the IRS for approximately 9 years.  Thus, he should not receive any  more consideration that his current criminal history category I.  Defendant's citation to the guideline departure provision does not assist because that provision prohibits a departure below the lower limit of criminal history category I. *See* §§ 5H1.8, 4A1.3(b).

Third, defendant has not demonstrated why he is the only person able to care for his wife's medical condition.  Indeed, defendant has two adult children who are both employed (one of whom is a successful actress in Hollywood), and who appear to be in positions to care for their mother on a short-term basis.  In addition, the PSR reflects that despite these claimed medical issues, defendant's wife is not seeking any treatment for her depression (PSR at 12), and that defendant's claims of other medical conditions have not been verified by the probation office. (PSR at 13).  Defendant's son has recognized that his mother may

be able to care for herself, and that defendant has not taken responsibility to discuss post-sentencing living arrangements with his son and the daughter. (PSR at 13).[1]  Thus, defendant's claim is not credible, and defendant's history and characteristics do not warrant a sentence less than a guideline sentence of approximately three years.

### 3.    General and Specific Deterrence

There is both a strong need for general and specific deterrence in this case.  The public needs to know that tax protesters will not be treated lightly upon conviction for tax evasion. A sentence short of imprisonment will only encourage those looking for a way to evade taxes to jump on the bandwagon and claim they are "sovereign" and "living souls."

In addition, given defendant's belief that he is a "living soul' and that the IRS has no "jurisdiction" over him, he is certainly likely to repeat his offense again. In addition, defendant was given countless opportunities to resolve this issue short of criminal prosecution, but ignored all of those attempts.  Indeed, defendant was sent a target letter by the government, and that letter was returned unopened, likely because defendant had previously informed the IRS that he would not open any further letters unless they addressed him as the "Living Soul."  This defendant requires specific deterrence in the form of a serious sentence of imprisonment.

---

[1]In addition, defendant has earned over $200,000 in each of the years involved in the offense and relevant conduct, and currently rents a condominium in the Gold Coast area of Chicago, Illinois.  He continues to earn over $150,000 per year according to the PSR.  His debt identified in the PSR primarily consists of IRS tax liens.  Defendant's failure to save funds so that his wife can live while he is incarcerated is not explained in the PSR.

4.      **Just Punishment**

There is also strong need for punishment in this case. In particular, defendant's imposition of a $4 million lien against an IRS revenue officer, a low-paid government employee merely doing his job, warrants a sentence of imprisonment by itself.

**IV.     Conclusion**

For the reasons set forth in this memorandum, the PSR, the Government's Version of Events and at sentencing, a sentence within the advisory guideline range of 30 to 37 months is reasonable, but not greater than necessary, to comply with the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     /s/ Sunil R. Harjani
Sunil R. Harjani
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
 (312) 353-9353